IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| Eric J. G., | |
| Plaintiff, | CV 20-91-M-KLD |
| vs. | ORDER |
| ANDREW SAUL, Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 et seq.

I. **Procedural Background**

Plaintiff filed an application for disability insurance benefits and supplemental security income on April 6, 2017, alleging disability since November 28, 2015 based on physical and mental impairments. (Doc. 12 at 249, 256.) Plaintiff later amended his alleged onset date to December 3, 2015. (Doc. 12 at 18.) Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. (Doc. 12 at 105-170; 18-29). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision dated

May 15, 2019, the agency's final decision for purposes of judicial review.

Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.   Legal Standards

### A.   Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to

the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

### B.    Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) he suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). *See also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch*, 400 F.3d at 679.

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three.

At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, she must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a

claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation process.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III.   **Discussion**

The ALJ followed the five-step sequential evaluation process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 3, 2015. (Doc. 12 at 21.) At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease; organic mental disorder; borderline

personality disorder; attention deficit-hyperactivity disorder (ADHD); anxiety

disorder; depressive disorder; and substance abuse disorder. (Doc. 12 at 21.) At

step three, the ALJ found that Plaintiff did not have an impairment or combination

of impairments that met or medically equaled any impairment described in the

Listing of Impairments, 20 C.F.R. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app.

1. (Doc. 12 at 21.)

The ALJ then found that Plaintiff had the residual functional capacity to

perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) with the

following limitations:

> He can lift/carry/push/pull 20 pounds occasionally and 10 pounds
> frequently. He can walk and/or stand about 6 hours per 8-hour
> workday and sit about 6 hours per 8-hour workday. He can frequently
> balance, stoop, kneel, crouch, crawl, and climb ramps/stairs. He can
> occasionally climb ladders/ropes/scaffolds. He must avoid
> concentrated exposure to extreme cold, vibrations, and hazards. He
> can understand, remember, and carry out simple and detailed tasks
> with a complexity level no greater than SVP 4. Work must require no
> more than occasional new learning. He can maintain concentration,
> pace, and persistence for such for 8-hour workdays and 40-hour
> workweeks. He can tolerate occasional, brief, and superficial
> interaction with two to three members of the public at one time. He
> can tolerate usual work situations and changes in routine work
> settings.

(Doc. 12 at 23.) At step four, the ALJ determined that Plaintiff was unable to

perform any past relevant work. (Doc. 12 at 27.) Proceeding to step five, the ALJ

found based on the vocational expert's testimony that there were other jobs

existing in significant numbers in the national economy that Plaintiff could perform. (Doc. 12 at 27-28.)

Plaintiff raises three issues on appeal. First, Plaintiff maintains the ALJ erred by not providing clear and convincing reasons for discounting his subjective symptom testimony. Second, Plaintiff argues the ALJ did not properly weigh the findings and opinions of his mental health medical providers and treating counselors. Third, Plaintiff argues the ALJ erred by failing to incorporate all his impairments into a hypothetical question presented to the vocational expert.

Plaintiff appears to raise a fourth issue challenging the ALJ's consideration of whether Plaintiff met one of the impairments described in Listing of Impairments. In Plaintiff's reply brief, however, he stated that he only "set out three specific issues" for review. (Doc. 16 at 1.) Perplexingly, Plaintiff then repeated his listing argument at the conclusion of his reply brief. (Doc. 16 at 10.) Out of abundance of caution, the Commissioner addressed Plaintiff's listing argument. Accordingly, the Court will also address Plaintiff's listing argument.

## A.    Subjective Symptom Testimony

Plaintiff argues the ALJ did not provide clear and convincing reasons for discrediting his testimony. The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504

Case 9:20-cv-00091-KLD   Document 18   Filed 03/30/21   Page 8 of 33

F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of his symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

Here, the ALJ found that Plaintiff met his initial burden because he produced evidence of medically determinable impairments that could reasonably be expected to cause his alleged symptoms. The ALJ then found that Plaintiff's subjective statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record. (Doc. 12 at 24).

At his administrative hearing, Plaintiff testified that his depression and anxiety limited his ability to work. (Doc. 12 at 43). The ALJ discounted Plaintiff's testimony as to his mental impairments for various reasons. First, the ALJ found this aspect of Plaintiff's testimony was not consistent with evidence showing that he worked for over a decade after incurring a brain injury in 1988, which he attributed to most significantly impacting his mental status. (Doc. 12 at 24, 398.)

The ALJ also cited inconsistencies in Plaintiff's explanation of why he left his previous job as an assembly mechanic. The reasons provided ranged from being laid off, sleeping on the job, and sleeping on the job due to drug use, but none were tied to Plaintiff's anxiety or depression. (Doc. 12 at 24.) The ALJ therefore found Plaintiff's "current unemployment is likely not due to any alleged impairments or symptoms from such." (Doc. 12 at 24.) *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (the ALJ "will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and [] evaluate whether the statements are consistent with objective medical evidence and the other evidence", including "the consistency of the individual's own statements.").

Plaintiff argues the ALJ concluded that Plaintiff's mental status remained static following his brain injury without support from any objective medical findings. The ALJ did not go so far. Rather, the ALJ pointed out that Plaintiff's ability to work after sustaining his brain injury is inconsistent with his statements that his brain injury most drastically affected his mental status. (Doc. 12 at 24.) *See also* Doc. 12 at 398 (Plaintiff reported his mental state has gradually improved following the 1988 injury). The ALJ also cited treatment notes indicating that although Plaintiff intermittently experienced stressful situations, he was overall cooperative, calm, and without distress. (Doc. 12 at 25.) Plaintiff's inconsistent

statements and evidence of his improving mental status were legitimate bases for discrediting his testimony that his mental impairments prohibit him from engaging in employment. See *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (Even if the record is "susceptible to more than one rational interpretation," if the ALJ's decision is supported by substantial evidence it must be upheld.").

Second, the ALJ noted that although Plaintiff testified that his depression worsened in 2018, the medical evidence in the record does not fully support Plaintiff's claim. (Doc. 12 at 25.) The ALJ then appropriately linked Plaintiff's testimony to contradictory evidence in the record. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The ALJ cited records from 2018 showing Plaintiff's reports that "his ADHD and moods were well controlled with medication and treatment." (Doc. 12 at 25.) The ALJ also cited treatment notes from 2018 stating that Plaintiff had a "normal" or "appropriate" mood and affect. (Doc. 12 at 25.)

The ALJ also discounted Plaintiff's subjective complaints concerning his memory and concentration based on evidence in the record. The ALJ cited a mental status examination describing Plaintiff as "a good historian" who "was alert, cooperative, and [had] normal attention[.]" (Doc. 12 at 24.) The ALJ's identification of medical evidence that was inconsistent with Plaintiff's testimony was a legitimate reason for discounting Plaintiff's testimony that his depression

10

worsened in 2018. *Burch*, 400 F.3d at 681 (finding that although a lack of objective medical evidence cannot provide the only basis to reject a claimant's testimony, it is a factor the ALJ should consider in evaluating subjective symptom testimony).

Accordingly, the Court concludes the ALJ provided clear and convincing reasons, supported by substantial evidence in the record, for discounting Plaintiff testimony as to his depression and anxiety.

### B.  Medical Opinion Evidence

Plaintiff argues the ALJ failed to properly weigh the objective findings and opinions of Dr. Patenaude, Ph.D, Irene Walters, APRN, Carleen Grussling, LCSW, and Terisa Kerr, MPC. The ALJ's evaluation of the medical opinion evidence is subject to the SSA's amended regulations pertaining to all claims filed after March 27, 2017.

Under the new regulations, the ALJ "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017). *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). These regulations do away with the traditional hierarchy between treating, examining, and non-examining physicians, and instead direct the ALJ to consider all medical opinions and prior administrative

medical findings, and evaluate their persuasiveness using several listed factors. 20 C.F.R. §§ 404.1520c(a), 416.920(a). Those factors include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c), 416.920(c). The two most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920(a).

The regulations require the ALJ to articulate how persuasive she finds all of the medical opinions and prior administrative medical findings, and set forth specific "articulation requirements" for the ALJ's evaluation of the medical opinion evidence. 20 C.F.R. §§ 404.1520c(b), 416.920(b). When one medical source provides multiple opinions, the ALJ is not required to articulate how she "considered all of the factors for all of the medical opinions" and will instead articulate how she considered those opinions "together in a single analysis using the factors" listed above. 20 C.F.R. §§ 404.1520c(b)(1), 416.920(b)(1). Because supportability and consistency are the most important factors, the ALJ must explain how she considered these factors in the decision. Generally, the ALJ is not required to explain how she considered the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920(b)(2). However, when the ALJ finds that two or more medical opinions are equally well-supported and consistent with the record but are

not exactly the same, she must articulate how she "considered the other most persuasive factors." 20 C.F.R. §§ 404.1520c(b)(3), 416.920(b)(2).

While these regulations eliminate the hierarchy between treating, examining, and non-examining medical sources, the ALJ must still provide legally sufficient reasons supported by substantial evidence for finding a medical opinion unpersuasive. *See e.g., Beason v. Saul*, 2020 WL 606760, *3 (C.D. Cal. Feb. 7, 2020).

Because Plaintiff filed his claim on April 6, 2017, the amended regulations apply in this case. Thus, the Court must determine whether the ALJ properly evaluated the persuasiveness of the medical opinions using the factors set forth above. *See e.g., Ryan L.F. v. Commissioner of Social Security,* 2019 WL 6468560 *3-4 (D. Or. Dec. 12, 2019).

### 1.    Dr. Patenaude, Ph.D

Dr. Patenaude conducted multi-day neuropsychological testing of Plaintiff in September 2016. (Doc. 12 at 393-405.) Dr. Patenaude completed a neuropsychological evaluation report upon the culmination of Plaintiff's testing. (Doc. 12 at 397.) In his report, Dr. Patenaude made various observations and findings related to Plaintiff's cognitive and psychiatric status.

Dr. Patenaude observed Plaintiff as "reserved but pleasant." (Doc. 12 at 400.) He noted it was difficult to follow Plaintiff's conversations "as he tended to lose focus and become derailed during the conversation." (Doc. 12 at 400.) Dr. Patenaude also found Plaintiff was "engaged" and "effortful" during testing. (Doc. 12 at 401.) After testing Plaintiff's cognitive functioning, attention, concentration, and memory, Dr. Patenaude opined that Plaintiff "possesses low average gross cognitive functioning", experiences "difficulties across a number of areas" in regard to his personality and mood, "is easily overwhelmed by normal and anticipated life stressors", and has "limited social skills." (Doc. 12 at 401-04.) Dr. Patenaude further found Plaintiff had "adequate ability to utilize working memory and inconsistent ability to sustain attention." (Doc. 12 at 401.)

Dr. Patenaude opined that Plaintiff's test results suggested Plaintiff's "inability to continue working is attributed to the anxiety/stress coupled with difficulty processing and organizing information." (Doc. 12 at 404.) He further found that Plaintiff's difficulties "increase an already present emotional dyscontrol, which further erodes his cognitive capacities." (Doc. 12 at 404.) Dr. Patenaude explained that these issues result in Plaintiff being "interpersonally isolated with little prospects of creating and maintaining relationships." (Doc. 12 at 404.) He concluded that it was "unreasonable to expect [Plaintiff] to maintain, let alone

14

obtain, competitive employment" but opined that it was not unreasonable for Plaintiff to move "toward some sort of supported/limited work involvement" if he could "optimize his mental health and pain management." (Doc. 12 at 404.)

The ALJ considered Dr. Patenaude's opinion, but found it unpersuasive for two reasons: (1) it was inconsistent with Plaintiff's work history at a skilled job for several years; and (2) it did not provide a function-by-function assessment of the claimant's abilities and limitations. Apart from these two reasons, the ALJ provided no further discussion of the supportability and consistency factors. (Doc. 12 at 27.) To the extent the ALJ addressed these factors, she failed to do so in any meaningful way.

The ALJ does not clearly articulate how she applied the consistency and supportability factors. However, it appears the entirety of the ALJ's consistency analysis is contained in one sentence: "[t]his opinion is not persuasive because the claimant worked at a skilled job for Boeing for several years, despite his alleged brain injury and mental impairments." (Doc. 12 at 27.) The ALJ's brief statement fails to specify how Plaintiff's work history, which concluded five years prior to Dr. Patenaude's assessment and eight years prior to the ALJ's decision, is inconsistent with Dr. Patenaude's medical opinion addressing Plaintiff's mental status in 2016. The Court fails to see how Plaintiff's dated work-history contradicts

the testing and limitations set forth in Dr. Patenaude's opinion. The ALJ's conclusory determination does not come close to "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings[.]" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

As explained, the ALJ must provide legally sufficient reasons supported by substantial evidence for finding a medical opinion unpersuasive. *Beason*, 2020 WL 606760 at *3. The ALJ's rejection of Dr. Patenaude's opinion based on Plaintiff's work history is not supported by substantial evidence. In fact, Dr. Patenaude's opinion discusses Plaintiff's work history with Boeing and Plaintiff's mental status after leaving that job. (Doc. 12 at 397.) His opinion specifically discusses Plaintiff's ongoing depression and anxiety and is supported by objective neuropsychological testing. (Doc. 12 at 397.)

The ALJ also failed to adequately explain how she considered the supportability factor in rejecting Dr. Patenaude's opinion. It is unclear whether the ALJ attempted to discuss supportability by stating "Dr. Patenaude provided no function-by-function assessment of the claimant's abilities and limitations, which might have been helpful in formulating the residual functional capacity." (Doc. 12 at 27.) To the extent this sentence purports to address supportability, it falls short.

16

The ALJ did not articulate how she applied the supportability factor to discount Dr. Patenaude's opinion, and her explanation is not supported by substantial evidence in the record. The medical evidence in the record reveals Plaintiff has been treated for depression and anxiety for multiple years. Finally, contrary to the ALJ's assertion, Dr. Patenaude's opinion did provide a functional assessment. For example, he opined that employment could only be considered for Plaintiff if it was "part-time in a low cognitive demand position that is routine and predictable." (Doc. 12 at 404.)

The ALJ erred by failing to adequately consider and discuss the supportability and consistency factors for evaluating the persuasiveness of Dr. Patenaude's opinion. On remand, the ALJ must clearly explain how she considered these factors, and her explanation must be supported by substantial evidence in the record.

### 2.   Irene Walters, APRN

Plaintiff argues the ALJ failed to properly consider the opinion of Irene Walters, APRN. (Doc. 14 at 21.) However, Plaintiff does not identify an opinion made by APRN Walters which the ALJ failed to consider. The Commissioner does not address APRN Walters in defending the ALJ's evaluation of the medical opinion evidence. (Doc. 15.) Finally, the ALJ did not consider statements from

17

APRN Walters when evaluating the opinion evidence in the record. The ALJ explained that she was not required to articulate reasons for discounting statements by medical providers that did not qualify as medical opinions under the regulations. (Doc. 12 at 25.)

Treatment notes generally do not constitute medical opinions the ALJ must weigh. Treatment notes must include opinions regarding Plaintiff's limitations or ability to work to be considered a medical opinion. *See* 20 C.F.R. § 416.913(a)(2) and 20 C.F.R. § 4041513(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in your work-related abilities.). Here, APRN Walters did not offer opinions regarding Plaintiff's limitations or ability to work. *See* Doc. 12 at 1018-55. Accordingly, the ALJ did not err by failing to evaluate APRN Walter's treatment notes as medical opinions. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (ALJ was not required to provide clear and convincing reasons for rejecting physician's report because physician did not assign specific limitations as to claimant's ability to work).

/ / /

/ / /

3.   Carleen Grussling, LCSW

Plaintiff next argues the ALJ failed to properly evaluate the opinion of

Carleen Grussling, LCSW. LCSW Grussling is a licensed clinical social worker

who worked with Plaintiff for several years. On March 28, 2017, LCSW Grussling

assessed Plaintiff for mental health services. (Doc. 12 at 943.) In her report, LCSW

Grussling opined that Plaintiff has various ongoing symptoms stemming from his

bipolar disorder including anxiety, difficulty concentrating, low energy, and

irritability. (Doc. 12 at 945.)

Between 2016 and 2018, LCSW Grussling kept notes from her therapy

sessions with Plaintiff. (Doc. 12 at 951-86.) These notes document Plaintiff's

mental status during those years and opine on Plaintiff's limitations. For example,

LCSW Grussling opines that Plaintiff "has trouble with boundaries", "is usually in

crisis", requires "structure and stability", "struggles to maintain focus at times",

and would have issues being at a job "consistently" meaning "every day". (Doc. 12

at 951, 955, 965, 967, 981.)

On March 12, 2019, LCSW Grussling wrote a letter concerning Plaintiff's

mental status. (Doc. 12 at 1074.) In the letter, LCSW Grussling states that Plaintiff

struggles with reading comprehension and refers to Dr. Patenaude's

neuropsychological evaluation regarding Plaintiff's issues with inattention and

19

ADHD. (Doc. 12 at 1075.) LCSW Grussling also states that Plaintiff's 1988 brain injury "further impacted his ability to read and to process information." (Doc. 12 at 1075.)

The ALJ considered LCSW Grussling's opinion but found it unpersuasive for four reasons: (1) Plaintiff's pain was largely resolved during the period at issue; (2) Plaintiff's mental status examinations do not support the contention that he was unable to work; (3) Plaintiff performed skilled work at Boeing following his traumatic brain injury and only stopped working there because he fell asleep during his shift; and (4) LCSW Grussling did not provide a function-by function assessment of Plaintiff's abilities and limitations. The ALJ was required to articulate how she considered supportability and consistency as factors in rejecting LCSW Grussling's opinion. 20 C.F.R. §§ 404.1520c(a), 416.920(a). Additionally, those reasons must be legally sufficient and supported by substantial evidence.

First, the ALJ's finding that Plaintiff's "pain was largely resolved" is not a legitimate reason for discounting LCSW Grussling's opinion that Plaintiff could not work due to mental health symptoms. Contrary to the ALJ's statement that LCSW Grussling found Plaintiff unable to work because of "mental health symptoms *and pain*", her opinion is not based on Plaintiff's pain. (Doc. 12 at 26, 1074) (emphasis added). The letter cited by the ALJ in support of her finding does

not link LCSW Grussling's opinion of Plaintiff's inability to work to pain. Rather, the opinion is explicitly linked to Plaintiff's mental limitations. (Doc. 12 at 1075.) LCSW Grussling's discussion of "pain" is solely related to explaining Plaintiff's marijuana use. The Court fails to see how this tangential discussion in LCSW Grussling's letter contradicts the functional limitations set forth in her opinion regarding Plaintiff's mental health.

The ALJ also determined that the mental status examinations documented elsewhere in her decision do not support LCSW Grussling's opinion that Plaintiff is unable to work. (Doc. 12 at 26.) The ALJ did not specify which examinations she was referring to, or how the findings failed to support LCSW Grussling's opinion. The ALJ's vague reference to the mental status examinations "as noted herein" is not a sufficiently specific reason for finding LCSW Grussling's opinion unsupported and therefore unpersuasive. The ALJ's analysis of LCSW Grussling's opinion does not meet the Ninth Circuit's requirement that an ALJ link purportedly inconsistent evidence with the discounted medical opinion. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

The ALJ's next reason for finding LCSW Grussling's opinion unpersuasive is also not supported by substantial evidence. The ALJ discounted LCSW's opinion because Plaintiff performed skilled work at Boeing following his traumatic

brain injury and only stopped working there because he fell asleep during his shift. (Doc. 12 at 26.) As discussed above, the ALJ cited Plaintiff's previous work history to discount Dr. Patenaude's opinion, and this Court found the ALJ's reasoning illegitimate. That finding is equally appropriate here. The ALJ fails to specify how Plaintiff's 2011 work history is inconsistent with LCSW Grussling's medical opinion addressing Plaintiff's mental status between 2016 and 2019. The Court fails to see how Plaintiff's dated work-history contradicts the limitations set forth in LCSW Grussling's opinion, which are based on her treatment of Plaintiff long after he ceased working for Boeing.

The ALJ's final reason for finding LCSW Grussling's opinion unpersuasive is also unavailing. The ALJ discounted LCSW Grussling's opinion because she did not provide a "function-by function assessment of claimant's abilities and limitations, despite his impairments." (Doc. 12 at 26.) It is not entirely clear whether the ALJ included this reason to substantiate her analysis of consistency, supportability, or some other factor. 20 C.F.R. § 404.1520c. Regardless, this reason alone without any further explanation does not indicate why the ALJ determined it contradicted LCSW Grussling's opinion. 20 C.F.R. § 404.1520c(c)(5) ("We will consider other factors that tend to support or contradict a medical opinion").

The ALJ also fails to explain why the ostensible lack of a function-by-function analysis repudiates LCSW Grussling's opinion, which is based on objective evidence and includes years of supporting treatment notes. Even so, LCSW Grussling's opinion did provide a functional assessment. For example, she opined that Plaintiff struggles with focus, comprehension, and boundaries, requires "structure and stability", and would have issues being at a job "consistently" meaning "every day". (Doc. 12 at 951, 955, 965, 967, 981.)

On remand, the ALJ must reassess LCSW Grussling's opinion. If the ALJ finds the opinion unpersuasive, she must clearly explain how she considered the supportability and consistency factors, and her explanation must be supported by substantial evidence in the record.

### 4.   Terisa Kerr, MPC

Plaintiff's last challenge to the medical opinion evidence pertains to Plaintiff's treating mental health case manager, Terisa Kerr, MPC. (Doc. 14 at 22.) In 2017, MPC Kerr wrote a letter discussing her treatment of Plaintiff and provided an opinion on his functional limitations and ability to work. (Doc. 12 at 523.) MPC Kerr opined that Plaintiff's functional limitations would "make it extremely difficult, if not impossible for him to obtain and sustain any meaningful employment." (Doc. 12 at 523.)

23

MPC Kerr identified and discussed several functional limitations Plaintiff possessed that would limit his ability to work. For example, MPC Kerr noted limitations in Plaintiff's ability to concentrate. (Doc. 12 at 523.) She also stated that Plaintiff's memory issues make "retaining any new information a tedious tasks [sic] that requires hands-on learning and significant repetition over an extensive period of time." (Doc. 12 at 523.) MPC Kerr additionally opined that Plaintiff's depression and anxiety impede his daily activities, including interacting with the public and "reliably and consistently" attending a job. (Doc. 12 at 523.) MPC Kerr concluded that it is unlikely Plaintiff's mental health issues could be remedied to the point that he would be able to achieve regular employment. Rather, she opined that Plaintiff would more likely experience "further cognitive decompensation and even greater deficits" as time progressed. (Doc. 12 at 523.)

The ALJ considered MPC Kerr's opinion and found it unpersuasive for two reasons: (1) "Plaintiff worked at a skilled job at Boeing for several years despite his alleged brain injury and mental health symptoms"; and (2) MPC Kerr's opinion "does not quantify the claimant's limitations or abilities on a function-by-function basis, despite his impairments." (Doc. 12 at 26.) These reasons fail to address the supportability and consistency factors in any meaningful way. 20 C.F.R. §§

404.1520c(a), 416.920(a). Additionally, they are not legally sufficient or supported by substantial evidence.

The ALJ's entire assessment of MPC Kerr's opinion is contained in two sentences and does not explicitly address the supportability and consistency factors. To the extent the ALJ ostensibly discusses these factors, her discussion is conclusory. The ALJ must "set[] out a detailed and thorough summary of the facts and conflicting medical evidence, stating [the ALJ's] interpretation thereof, and making findings." *Mallagnes*, 881 F.2d at 751.

Additionally, the reasons provided by the ALJ are not legitimate or supported by substantial evidence. As previously discussed, the ALJ fails to link Plaintiff's 2011 work history following his traumatic brain injury to his current mental health status. As noted in MPC Kerr's opinion, Plaintiff's mental health faces "further cognitive decompensation and even greater deficits" as time progresses. (Doc. 12 at 54.) The ALJ's citation to Plaintiff's dated work history to discount a more recent medical opinion finding Plaintiff has ongoing mental health issues resulting in functional limitations assumes (1) Plaintiff's mental health has not changed since he ended his job at Boeing and; (2) Plaintiff's mental health issues are only related to his traumatic brain injury rather than his decades-long history of depression and anxiety. These assumptions are not supported by

25

substantial evidence in the record. Additionally, because the ALJ did not cite any evidence in the record to support her finding, it appears that she is providing her own lay opinion. "An ALJ must not substitute [her] own judgment for a physician's opinon without relying on other medical evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). *See also Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An 'ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion' and [she] 'must not succumb to the temptation to play doctor and make [her] own independent medical findings.'") (internal citations omitted).

Finally, contrary to the ALJ's statement that MPC Kerr did not provide a function-by-function assessment of Plaintiff's limitations or abilities, MPC Kerr did provide a functional assessment. MPC Kerr opined that Plaintiff suffered from attention and concentration deficits, "extreme difficulty" learning new tasks, short and long-term memory issues, difficulty retaining new information, public interaction limitations, comprehension and thought organization issues, and frustration and hostility "when interactions progress beyond what is routine, scripted and rehearsed or do not go according to expectation." (Doc. 12 at 524.) MPC Kerr also opined that Plaintiff would frequently be absent from work, "exceeding the employer standard allowed of 2 days per month" and his "limited

interpersonal skills and problem solving ability . . . could create problems for him and other in the workplace environment." (Doc. 12 at 524.)

For these reasons, the Court concludes the ALJ provide legally sufficient reasons supported by substantial evidence for finding MPC Kerr's opinion unpersuasive.

### C.   Listings

Plaintiff argues the ALJ erred by failing to find that he met the criteria of Paragraphs B and C when considering whether he met an impairment in the Listing of Impairments. Plaintiff attributes this alleged error to the ALJ's general failure to properly consider the medical evidence. (Doc. 14 at 33.)

The ALJ evaluated whether Plaintiff met the criteria of listings 12.02, 12.04, 12.06, 12.08, and 12.11. (Doc. 12 at 22.) Section 12.00 in the Listing of Impairments concerns mental disorders. 20 C.F.R. § 404 app. 1. To meet the requirements of a listing, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). The criteria listed in Paragraphs B and C "describe the functional limitations associated with the [mental] disorder which are incompatible with the ability to work." *Holohan v. Massanari*, 246 F.3d 1195, 1204 (9th Cir. 2001).

27

The Paragraph B criteria requires that a claimant's mental impairment result in extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understand, remember or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; (4) adapt or manage oneself. 20 C.F.R Pt. 404, Subpt. P, App.1 §§ 12.02B, 12.04B, 12.06B, 12.08B, 12.11B. If the Paragraph B criteria are not met, the ALJ can alternatively consider the functional limitations of the Paragraph C criteria. The Paragraph C criteria requires: a "serious and persistent" mental disorder with a "medically documented history" of at least two years, and evidence of (1) ongoing medical treatment that diminishes the symptoms and signs of your disorder; and (2) marginal adjustment, meaning the claimant has "minimal capacity to adapt to changes in [their] environment or to demands that are not already part of [their] daily life." 20 C.F.R. § 404, Subpt. P. App. 1 §§ 12.02C, 12.04C, 12.06C.

The ALJ considered the Paragraph B criteria and found Plaintiff's "mental impairments do not cause at least two 'marked limitations' or one 'extreme' limitation." (Doc. 12 at 22.) In reaching her determination, the ALJ acknowledged Plaintiff's mental health limitations, but found them to be moderate. The ALJ also considered the applicable Paragraph C criteria and concluded the evidence in the

record did not meet the criteria because Plaintiff's "symptoms have not resulted in marginal adjustment[.]" (Doc. 12 at 23.)

Plaintiff does not specify which findings the ALJ purportedly got wrong when evaluating the Paragraph B and C criteria. Instead, the Plaintiff simply concludes the ALJ erred without setting forth "any evidence which would support the diagnosis and findings of [the] listed impairment[s]." *Burch*, 400 F.3d at 683; (Doc. 14 at 33; Doc. 16 at 10). Although the Plaintiff generally mentions "the findings of the mental health care providers" as evidence that his impairments meet the listings, this vague reference is insufficient to support his argument that he meets the listing criteria. (Doc. 14 at 33-34.)

Notwithstanding Plaintiff's unsupported argument, the Court finds that there is substantial evidence in the record to support the ALJ's listing conclusions. The ALJ considered Plaintiff's difficulties with memory, interacting with others, concentration, management, and adaption. (Doc. 12 at 22.) The ALJ found Plaintiff had moderate limitations in these areas based on evidence of Plaintiff's ability to perform daily functioning activities, provide information about his health, follow instructions, comply with treatment instructions, complete testing, and respond to questions. (Doc. 12 at 22.) The ALJ also cited Plaintiff's statements that he was able to spend time with friends and family, live with others, and develop a good

rapport with his treating providers. (Doc. 12 at 22.) Additionally, the ALJ noted Plaintiff can live independently. (Doc. 12 at 22.) These reasons support the ALJ's Paragraph C finding that Plaintiff's symptoms have not resulted in "an inability to adapt to changes in the environment or demands not already part of daily life." (Doc. 12 at 23.)

The ALJ's findings are also supported by Plaintiff's neuropsychological evaluation. (Doc. 12 at 397.) The findings contained in the evaluation are consistent with the ALJ's finding that the Plaintiff had moderate limitations in the Paragraph B mental functioning areas. For example, the evaluation finds Plaintiff has an "adequate ability to utilize working memory and inconsistent ability to sustain attention", "marginal to impaired" memory, "appeared to be engaged during testing", "limited social skills", and "impaired" ability to "initiate/maintain goal-directed behavior." (Doc. 12 at 397-402.)

Although the neuropsychological evaluation and Plaintiff's statements about his abilities could be construed to support a finding of marked limitations or marginal adjustment, the Court cannot find the ALJ's conclusions were unreasonable. "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch*, 400 F.3d at 679. Therefore, reviewing the record as a whole, the Court concludes the ALJ's

determination regarding Plaintiff's ability to meet the Paragraph B and C criteria is supported by substantial evidence and is free of legal error.

### D.   Vocational Expert

Plaintiff argues the ALJ erred by failing to incorporate all his impairments into a hypothetical question presented to the vocational expert. Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the claimant. *Embrey*, 849 F.2d at 422. "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d at 756 (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's testimony that the claimant could perform other work existing in the national economy has no evidentiary value. *Embrey*, 849 F.2d at 422.

The Court has determined that the ALJ did not provided adequate reasons for finding the opinions of Plaintiff's medical providers unpersuasive. These errors may have affected the ALJ's hypothetical, and in turn, undermined the vocational expert's testimony that Plaintiff could perform other work existing in the national economy.

/ / /

E.    Remand

Plaintiff requests the Court remand this matter for an award of benefits. The Ninth Circuit has directed district courts to remand for an immediate award of benefits only if: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted).

Here, there are outstanding issues to be resolved. On remand, the ALJ should further consider the medical evidence discussed above. If the ALJ finds the medical opinions to be unpersuasive, she should clearly articulate how she applied the "supportability" and "consistency" factors in considering the medical opinion evidence. Additionally, the ALJ should ensure her determinations are supported by substantial evidence in the record.

The ALJ should also clarify what, if any, additional limitations are incorporated into the RFC assessment to account for Plaintiff's impairments. In addition, the Court acknowledges that the ALJ is in the best position to evaluate the medical evidence. Providing the ALJ with the opportunity to reevaluate the

medical evidence on remand will remedy the identified defects in the original administrative proceedings.

## IV.   **Conclusion**

For all of the above reasons, the Court concludes that the Commissioner's decision denying Plaintiff's claims for disability insurance benefits and supplemental income benefits be **REVERSED**. This matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**IT IS ORDERED**.

DATED this 30th day of March, 2021.

Kathleen L. DeSoto
United States Magistrate Judge